# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MARTHA SHINDOLL | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-00759 |
| | § | Judge Mazzant |
| UNITED OF OMAHA LIFE INSURANCE COMPANY | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant United of Omaha Life Insurance Company's Motion for Summary Judgment (Dkt. #18). After reviewing the relevant pleadings and responses, the Court finds the motion should be granted.

## BACKGROUND

United of Omaha Life Insurance Company ("United") issued a Group Long Term Disability Policy ("Policy") to XO Communications Services, LLC ("XO"). Under the Policy, United was given the discretion to decide benefits eligibility (Dkt. #18 at ¶ 9). Martha Shindoll ("Shindoll") worked at XO as a software applications engineer and senior manager. Shindoll was a Policy beneficiary through XO (Dkt. #18 at ¶ 10).

In 2005, Shindoll was diagnosed with fibromyalgia and Chronic Fatigue Syndrome ("CFS"). Following her diagnosis, she continued working, and in 2007, her symptoms went into remission (Dkt. #18 at ¶ 11). However, in 2010 she suffered a relapse. In November 2012, Kenneth Kippels, M.D. ("Dr. Kippels"), Shindoll's treating physician, ordered her off work.[1] On June 6, 2013, Shindoll obtained a Vocational Analysis from Carl E. Hansen, Ed.D. who opined

---

[1] In December 2012, Dr. Kippels also diagnosed Shindoll with hypothyroidism, pituitary dysfunction, severe immune dysfunction, elevated RNAse-L activity, elevated angiotensin converting enzyme, Epstein-Barr infection, HHV-6 infection, Parvo B19, neurotoxins, and Lyme disease (Dkt. #18 at ¶ 12). However, Shindoll notes that these diagnoses were not the basis of her application for disability benefits under the Policy (Dkt. #21 at p. 4).

that she was completely disabled (Dkt. #18 at ¶ 12). Shindoll then applied for short-term disability benefits, which United rejected. Shindoll appealed and thereafter submitted to an independent medical evaluation ("IME") conducted by Britt Daniel, M.D. ("Dr. Daniel"). After an examination and review of her medical records, Dr. Daniel found that Shindoll was completely disabled because of medication overuse syndrome (Dkt. #18 at ¶ 13). United approved Shindoll for short-term disability benefits on October 17, 2013 (Dkt. #18 at ¶ 14). The next month, Dr. Daniel issued an addendum to his initial diagnosis, stating Shindoll did not suffer from any cognitive dysfunction or physical functional impairment (Dkt. #18 at ¶ 15).[2]

After exhausting her short-term disability benefits, Shindoll began receiving long-term disability benefits. During United's continued claim investigation, Shindoll was not submitted for additional IME testing. On November 5, 2014, United submitted her file for peer reviews (Dkt. #18 at ¶ 6). First, Adam Raff, M.D. ("Dr. Raff") supplied a psychiatric and psychological peer review report. The report stated the records supported Shindoll had a history of anxiety, which did not prevent her daily functioning. Dr. Raff concluded that Shindoll did not have an impairing condition (Dkt. #18 at ¶ 17). And second, Jeffrey Sartin, M.D. ("Dr. Sartin") issued an infectious disease peer review report that found no cause for Shindoll's symptoms. Dr. Sartin also disagreed with the diagnosis of any infectious illness (Dkt. #18 at ¶ 18). On December 9, 2014, Thomas A. Reeder, M.D. ("Dr. Reeder"), Senior Vice President and Medical Director for Mutual of Omaha, sent a letter to Dr. Kippels that set forth a review of Shindoll's medical records, the IME, and peer reviews. Dr. Reeder concluded that Shindoll suffers from an anxiety disorder and somatoform symptoms but no physical or cognitive impairment (Dkt. #18 at ¶ 19).

On December 27, 2014, Dr. Kippels responded to Dr. Reeder's letter. He disagreed with Dr. Reeder's evaluation based on medical studies and serologic foundations for CFS and

---

[2] Shindoll notes that Dr. Daniel did not test her for cognitive dysfunction or for fibromyalgia (Dkt. #21 at p. 5).

fibromyalgia. Moreover, Dr. Kippels discredited Dr. Sartin's opinion by stating Dr. Sartin was not familiar with fibromyalgia or CFS (Dkt. #18 at ¶ 20). In response, Dr. Sartin supplied an addendum to his report after reviewing additional medical records, recent laboratory tests, and Dr. Kippels' letter. Dr. Sartin concluded that additional evidence did not change his opinion that Shindoll does not suffer from any impairing conditions or infectious disease (Dkt. #18 at ¶ 21). Dr. Raff also issued an addendum to his earlier report after reviewing Dr. Reeder's letter, Dr. Kippels's letter, Dr. Sartin's peer review report, and additional medical records. Dr. Raff determined the additional evidence did not change this opinion that Shindoll does not suffer from psychological, psychiatric, or functional impairment that required medical limitations or restrictions (Dkt. #18 at ¶ 22). On February 23, 2015, Dr. Reeder responded to Dr. Kippels's letter. He indicated that Dr. Sartin's and Dr. Raff's review of additional records did not change their opinion that Shindoll's records do not support Shindoll's claimed impairment (Dkt. #18 at ¶ 23).

United denied Shindoll's continued long-term disability claim on March 5, 2015 (Dkt. #18 at ¶ 24). Shindoll appealed United's denial, arguing that United did not submit her claim for review by a physician with experience in fibromyalgia or CFS. Moreover, Shindoll pointed out that Dr. Didriksen (a neuropsychologist), Dr. Spurlock (another physician that Shindoll sought a second opinion), and the Social Security Administration all agreed that Shindoll is fully disabled (Dkt. #18 at ¶ 25).

Paul Howard, M.D. ("Dr. Howard"), a board certified rheumatologist, released an independent peer review report. Dr. Howard reviewed Shindoll's medical records and spoke with Dr. Kippels and Dr. Spurlock. Dr. Howard determined that Schindooll suffers from chronic fatigue, anxiety, fibromyalgia, and cervical osteoarthritis. He noted that there were no

3

neurological abnormalities and concluded that Shindoll's limitations and restrictions were not supported (Dkt. #18 at ¶ 27). On September 11, 2015, Michael R. Villanueva, PsyD, ABPP-CN ("Dr. Villanueva") issued a neuropsychological peer review report. After reviewing Shindoll's medical records from treating physicians, former IME reports, occupational analysis, and other relevant information, Dr. Villanueva concluded that Shindoll does not have a neuropsychological impairment, and there is no evidence of cognitive impairment requiring limitations or restrictions. Utilizing Dr. Didriksen's neuropsychological assessment results, Dr. Villanueva determined that Shindoll's scores were normal (Dkt. #18 at ¶ 28).

United upheld its denial of Shindoll's claim. After exhausting all of her administrative remedies, Shindoll filed this suit on October 28, 2015 under the Employee Retirement Income Security Act ("ERISA") (Dkt. #1). Shindoll asserts claims for (1) denial of benefits under 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(3) and 1109; and (3) interference under 29 U.S.C. § 1140 (Dkt. #1 at ¶ 38; Dkt. #18 at ¶ 1). On May 25, 2016, United filed its motion for summary judgment (Dkt. #18). Shindoll filed a response on June 27, 2016 (Dkt. 21). United filed a reply on July 22, 2016 (Dkt. #29). On August 13, 2016, Shindoll filed a sur-reply (Dkt. #33).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "'significant probative evidence'" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad.*

*Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS[3]

United claims that it is entitled to summary judgment on Shindoll's denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B) because its decision was based on substantial evidence. Further, United argues it did not abuse its discretion or act arbitrarily and capriciously when it denied Shindoll's continued long-term disability benefits claim under the Policy.

Shindoll responds that summary judgment is improper because United's decision was arbitrary and capricious and not supported by substantial evidence.[4]

The Court reviews an administrator's denial of ERISA benefits for an abuse of discretion if "'an administrator has discretionary authority with respect to the decision at issue." *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 397 (5th Cir. 2007) (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc)). Under the abuse of discretion standard, if the administrator's "'decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'" *Id.* at 397 (quoting *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004)). "'Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 398 (quoting *Ellis*, 394 F.3d at 273). An arbitrary and

---

[3] Since the denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is dispositive for the remainder of Shindoll's claims, the Court considers only that claim, which is the only claim briefed by the parties.

[4] Shindoll also argues that United is not entitled to the abuse of discretion standard and thus summary judgment is improper because United's Motion for Summary Judgment (Dkt. #18) does not show how Shindoll fails to meet the definition of "disability" or "disabled" under the Policy (Dkt. #21 at p. 2). However, a determination of whether a plan participant is disabled under the terms of a disability policy is a fact determination subject to review under an abuse of discretion standard. *Ladner v. Unum Life Ins. Co. of N. Am.*, No. 04-3468, 2007 WL 1191158, at *3 (E.D. La. Apr. 19, 2007) (citing *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601 (5th Cir. 1994)). Therefore, the Court will proceed with its analysis under the abuse of discretion standard.

capricious decision "'is one made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Id.* (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)).

Weighing reliable, conflicting evidence is not the job of the courts; rather, it is the job of the ERISA plan administrator. *Id.* at 401. When confronted with reliable yet conflicting evidence, a plan administrator is "not obliged to accord special deference to the opinions of treating physicians." *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 249 (5th Cir. 2007) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). Accordingly, a plan administrator can rely on the opinion of a consulting physician who conflicts with the claimant's treating physician. *Id.* "This is so even if the consulting physician only reviews medical records and never physically examines the claimant . . . ." *Id.* While a Social Security Administration ("SSA") determination should be considered by a plan administrator, a contrary SSA determination is one factor of many that must be taken into account. *Schexnayder v. Hartford Life and Accident Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010) (citation omitted); *see also Nugent v. Aetna Life Ins. Co.*, 540 F. App'x 473, 475 (5th Cir. 2014) (acknowledging a plan administrator is not required to afford a contrary SSA determination any specific weight).

The Court determines United was given discretion to decide to deny Shindoll's claim for continued long-term disability under the Policy. Thus, United's decision should be reviewed under the abuse of discretion standard. Applying the abuse of discretion standard, the Court finds that United's decision was supported by substantial evidence. Here, substantial evidence takes the form of an IME and four independent peer reviews. Dr. Daniels conducted an IME on Shindoll and stated in his addendum that she does not suffer from any cognitive dysfunction or physical functional impairment. Next, United submitted Shindoll's file for peer reviews. Dr.

Raff concluded in his psychiatric and psychological peer review report and its addendum that Shindoll does not have an impairing condition. Dr. Sartin concluded in his infectious disease peer review report that Shindoll does not have an active infectious illness. He also stated in his addendum to the report that Shindoll does not have an impairing condition. Dr. Reeder reviewed Shindoll's medical records, the IME, and the other peer reviews and concluded that Shindoll does not suffer from a physical or cognitive impairment.

Moreover, United submitted Shindoll's claim for review by physicians with experience in fibromyalgia or CF. Dr. Howard concluded in his rheumatology peer review report that Shindoll does not have neurological abnormalities to support limitations and restrictions. Then, Dr. Villanueva concluded in his neuropsychological peer review report that Shindoll does not have an impairing condition. Based on the additional evidence from Dr. Howard and Dr. Villanueva, United upheld its denial of Shindoll's continued long-term disability benefits claim. Therefore, United's decision to deny Shindoll's long-term disability benefits was supported by substantial evidence from Dr. Daniel's IME and by the peer reviews from Dr. Raff, Dr. Sartin, Dr. Howard, and Dr. Villanueva. The IME and the four peer reviews offer "more than a scintilla" of evidence such that "a reasonable mind might accept as adequate to support a conclusion." *Corry*, 499 F.3d at 398.

The Court also determines that United's decision was not arbitrary or capricious. United's consulting physicians considered evidence from Shindoll's treating physicians, such as medical records, tests, and statements, when they conducted their evaluations. And while Shindoll's treating physicians' opinion differed from United's consulting physicians', United was not required to give deference to Shindoll's treating physicians. United weighed the opinions of Shindoll's treating physicians and, ultimately, chose to accept its physicians'

evidence, which United was permitted to do under law.  Even though the SSA found Shindoll was disabled, United was not required to follow that determination.  "A plan administrator need only consider the SSA's determination, but it may conclude that the medical evidence supporting denial is more credible." *Nugent*, 540 F. App'x at 475.  Here, United considered the SSA determination in its March 5, 2015 letter that denied Shindoll's continued long-term disability claim.  In that letter, United stated, "It is noted that Ms. Shindoll's Social Security Disability Application has been approved as of April 1, 2013.  However, we have in our possession documents that postdate the Social Security decision.  Thus we are not persuaded by the Social Security award." (Dkt. #29, Exhibit 1 at SHINDOLL-000214).  It is clear United did not give the prior approved SSA award any significant weight because United examined medical evidence that was not available to the SSA when it found Shindoll disabled.  Since there was "rational connection between the known facts" and United's decision to deny Shindoll's disability claim, United did not act arbitrarily or capriciously. *Corry*, 499 F.3d at 398 (citation omitted).

## CONCLUSION

Based on the foregoing, the Court concludes that United did not abuse its discretion or act arbitrarily and capriciously because it relied upon substantial evidence when it denied Shindoll's claim for long-term disability benefits.

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #18) is hereby **GRANTED**.

**SIGNED this 12th day of December, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE